MAURICE J. COHN AND MARGARET COHN, PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

HAROLD S. ELOVICH AND PHYLISS ELOVICH, PETITIONERS *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3017–75, 3023–75.     Filed December 5, 1979.

*Harold S. Elovich*, for the petitioners.
*Julius A. Jove* and *David A. Schmudde*, for the respondent.

OPINION

TANNENWALD, *Judge:* Respondent determined deficiencies in

---

income tax against petitioners for the taxable year 1970 as follows:

Docket No. 3017–75 ........ $4,705

Docket No. 3023–75 ........ 6,094

The sole issue for decision is whether section 83[1] applies to a situation wherein restricted stock is received by a person not an employee.[2]

All of the facts are stipulated and are found accordingly.

Petitioners Harold and Phyliss Elovich are individuals whose legal address as of the date of the filing of the petition was 18 North Clover Drive, Great Neck, N.Y. 11020. Petitioners Maurice and Margaret Cohn are individuals whose legal address as of the date of the filing of the petition was 652 Long Hill Road, West Briarcliff Manor, N.Y. 10510. Petitioners filed their tax returns for the taxable year 1970 with the Internal Revenue Service at Andover, Mass.

During the taxable year ending on July 31, 1970, petitioners Harold Elovich (Elovich) and Maurice Cohn (Cohn) were the only two shareholders of Mega Research Corp. (Mega), a corporation which was an electing small business corporation described in sections 1371 and 1372.

Mega performed certain services for Integrated Resources, Inc. (Integrated), through Elovich and Cohn. Integrated transferred 1,000 shares of its stock on February 9, 1970, in payment for services such as "finders" to Elovich and Cohn as tenants in common. On that same day, Elovich and Cohn purported to assign those shares to Mega. Neither Elovich nor Cohn was an employee of Integrated.

Unrestricted Integrated stock was selling on the over-the-counter market at a price of $51 per share on February 9, 1970.

The shares of Integrated received by petitioner Elovich were subject to an "investment letter,"[3] dated January 28, 1970, in which he represented to Integrated that the shares of stock were

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.

[2] There is an automatic adjustment of a deduction for medical expenses which is dependent upon our decision herein.

[3] The record does not contain any evidence of any such letter signed by Cohn, but it is a reasonable inference from the stipulated facts that he was subject to the same restrictions as those contained in the Elovich investment letter. In any event, in light of our decision herein, the presence or absence of such restrictions on Cohn's stock in immaterial.

being acquired for investment purposes and that he had no present intention to sell these shares. The letter further provided that each share of stock would carry a legend to the effect that the shares involved had not been registered under the Securities Act of 1933, and that a public transfer of said shares free and clear of restrictions would not be made without a registration or opinion from counsel satisfactory to Integrated that a registration was not required. To this extent, Elovich could have transferred the shares in any manner permitted under the Securities Act of 1933.

On May 22, 1970, Mega transferred its 1,000 shares of Integrated in an arm's-length transaction for $25,000. The transfer was made with certain options and subject to the "investment letter" restrictions. Elovich and Cohn reacquired the stock under the provisions of the agreement for $31,250 on November 16, 1972.

Subsequently, Elovich and Cohn were unsuccessful in their attempt to obtain from Integrated a rescission of the restrictions. In late 1972, they endeavored to sell their shares under rule 144 of the Securities and Exchange Commission (SEC) but were unable to make a sale because permission to sell was not granted by the SEC. The shares remained unsold as of the date of trial.

Petitioners rest their entire case on the proposition that Elovich and Cohn and/or Mega were "independent contractors" and not employees of Integrated and that, therefore, section 83 does not apply to the acquisition of the shares from Integrated. They rely on the legislative history surrounding the statute to support their position that section 83[4] was intended to apply only to restricted stock transferred to employees. Respondent contends that the words "any person" in section 83(a) encompass

---

[4]SEC. 83. PROPERTY TRANSFERRED IN CONNECTION WITH PERFORMANCE OF SERVICES.

(a) GENERAL RULE.—If, in connection with the performance of services, property is transferred to any person other than the person for whom such services are performed, the excess of—

(1) the fair market value of such property (determined without regard to any restriction other than a restriction which by its terms will never lapse) at the first time the rights of the person having the beneficial interest in such property are transferable or are not subject to a substantial risk of forfeiture, whichever occurs earlier, over

(2) the amount (if any) paid for such property,

shall be included in the gross income of the person who performed such services in the first taxable year in which the rights of the person having the beneficial interest in such property are transferable or are not subject to a substantial risk of forfeiture, whichever is applicable. * * *

independent contractors as well as employees. We agree with respondent.

Petitioners rely on the legislative history surrounding the statute to support their position that section 83 was not intended to apply to independent contractors. Prior to 1969, when an individual made a bargain purchase of stock subject to restrictions having a significant effect on value, that person would be taxed only when the restrictions lapsed or the property was sold in an arm's-length transaction. The amount taxable as ordinary income was the lesser of the fair market value of the stock at the time of its acquisition, determined without regard to the restrictions, or at the time the restrictions lapsed, over the individual's cost of the stock. Secs. 1.61–2(d)(5) and 1.421–6(d)(2), Income Tax Regs. Petitioners' position is that these rules apply, rather than section 83, because that section was enacted to prevent the abuses of restricted stock plans in the employer-employee (in particular, executive employee) context.

We reject petitioners' argument. While restricted stock plans involving employers and employees may have been the primary impetus behind the enactment of section 83, the language of the section covers the transfer of any property in connection with the performance of services "to *any person* other than the person for whom such services are performed." (Emphasis added.) The legislative history makes clear that Congress was aware that the statute's coverage extended beyond restricted stock plans for employees. H. Rept. 91–413 (Part 1) (1969), 1969–3 C.B. 200, 255; S. Rept. 91–552 (1969), 1969–3 C.B. 423, 501. The regulations state that section 83 applies to employees and independent contractors (sec. 1.83–1(a), Income Tax Regs.), and that a transfer to an employee or independent contractor in recognition of services rendered is considered to be a transfer in connection with services (sec. 1.83–3(f), Income Tax Regs.). There is no question but that, under the foregoing circumstances, these regulations are not "unreasonable and plainly inconsistent with the revenue statutes." Consequently, they are sustained. *Fulman v. United States*, 434 U.S. 528, 533 (1978), quoting *Bingler v. Johnson*, 394 U.S. 741, 749–750 (1969), and *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501 (1948). Thus, the

acquisition of the stock of Integrated in 1970 falls within the ambit of section 83.[5]

The foregoing analysis readily disposes of petitioners' attempt to distinguish *Sakol v. Commissioner*, 67 T.C. 986 (1977), affd. 574 F.2d 694 (2d Cir. 1978), on the ground that only an employee was involved therein.[6]

*Decision will be entered for the respondent.*

---

[5]See also *Cassetta v. Commissioner,* T.C. Memo. 1979–384.
[6]No issue as to valuation has been raised by the parties herein. See *Cassetta v. Commissioner,* n. 5 *supra.*